**FILED**

OCT - 2 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>   Plaintiff, )<br><br>vs. )<br><br>JERRY JOHN FIORILLO, )<br><br>   Defendant. )<br>——————————————— )<br>JERRY JOHN FIORILLO, )<br><br>   Movant, )<br><br>vs. )<br><br>UNITED STATES OF AMERICA, )<br><br>   Respondent. )<br>——————————————— ) | NO.  CR-94-427-JLQ<br><br>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>NO.  04-CV-729-JLQ |

A telephonic hearing was held on the Defendant Jerry John Fiorillo's Motion for Summary Judgment and Petition for Writ of Habeas Corpus on August 24, 2006.  Flora Edwards appeared *pro hac vice* on behalf of Movant.  Assistant United States Attorney J. Douglas Wilson appeared on behalf of Respondent. Having reviewed the record, heard argument of counsel, and being fully advised in this matter, **It Is Hereby Ordered** that Movant's Motion for Summary Judgment and his Petition for Writ of Habeas Corpus are **Denied** for the following reasons.

## 1. Background

On August 31, 1994, the United States filed an Indictment against Jerry John Fiorillo, Anthony Flowers, Robert Hermanek, Sheldon Johnson, Robert Rutherford, and others charging them with conspiracy to distribute large quantities

of cocaine, numerous counts of distribution of cocaine, possession with intent to distribute cocaine, and the use of cloned cellular phones with the intent to defraud. The Government alleged that Anthony Flowers was at the center of a large-scale cocaine distribution organization in the Oakland and east-bay areas; that Jerry Fiorillo and Robert Hermanek were Flower's suppliers of up to 15 kilograms of cocaine each week; and that Sheldon Johnson and Robert Rutherford were among Flowers' larger customers.

On August 2, 1996, after numerous pretrial hearings and a mistrial declared during jury selection before Judge Fern Smith, the case was reassigned to the undersigned. The jury trial of Defendant Fiorillo and 5 other Defendants commenced on August 27, 1996 and continued for a period of four months. The Government introduced six kilograms of cocaine seized from residences associated with Mr. Rutherford and 862 grams of cocaine seized from Flowers' other customers. No substantial quantities of cocaine were seized from any of these Defendants, other than Rutherford.

Because the probative value of the physical evidence, standing alone, was limited, the Government relied heavily on a large number of wiretapped cellular phone calls in which the Defendants allegedly discussed cocaine transactions. Although the calls themselves never mentioned "cocaine" or other drugs by name, the Government offered, over Defendants' objections, the expert testimony of FBI special agent John Broderick to interpret the coded language contained in the conversations and words he had encountered in other drug cases, as well as words he encountered for the first time in this case such as "Gucci watches" and "cookies," each of which he interpreted as references to cocaine.

The defense stressed the claimed ambiguity of the phone calls and the Government's failure to seize large quantities of cocaine from the Defendants other than Rutherford. They contended the phone calls could have referred to lawful conduct or to substances other than cocaine, such as marijuana or steroids.

At the close of evidence, the court directed a verdict of acquittal in favor of Defendants Rutherford and Johnson on the conspiracy charge finding that the Government had failed to establish a sufficient link between their possession of cocaine and the alleged Flowers, Fiorillo, and Hermanek conspiracy.   On December 27, 1996, the jury returned verdicts finding each Defendant guilty of possessing cocaine with intent to distribute and finding Hermanek, Flowers, and Fiorillo guilty of conspiracy. Fiorillo was also found guilty on one count of conspiracy to distribute cocaine, six counts of possession with intent to distribute cocaine and one count of fraudulent use of a counterfeit access devise. On February 16, 1999, the court imposed Mr. Fiorillo's sentences of 360 months in custody with the Bureau of Prisons, followed by 60 months of supervised release.

The five convicted Defendants appealed their convictions and sentences to the Ninth Circuit Court of Appeals. The Ninth Circuit affirmed all convictions, issued a published opinion at 289 F.3d 1076 (9th Cir. 2001), and an unpublished opinion at 47 Fed. Appx. 439 (9th Cir. 2002) addressing all the Defendants' plethora of claims on appeal. The Circuit Court found that the evidence against these Defendants was strong, and therefore concluded that any claimed evidentiary and vouching errors were harmless. The Ninth Circuit stated in part:

> The scores of taped conversations introduced as evidence unmistakably referred to transactions in contraband. The district court concluded that "those tape recordings, what those defendants were saying to each other, I feel, made out a strong case against them of drug conspiracy and possession with intent to distribute cocaine." Appellants contend that the conversations could have referred to

Memorandum Opinion-3

substances other than cocaine, such as marijuana or steroids. This argument might be persuasive if the other evidence in the case did not point convincingly to cocaine. For instance, some conversations referred to a substance that was "rocked up". The government elicited undisputed testimony that the only illegal substance that is "rocked up" is cocaine. References to "straight white" and "cool white" in taped conversations support the conclusion that the calls referred to cocaine, which is white in color.

*Hermanek,* 289 F.3d at 1095.

The Circuit affirmed all the convictions and sentences, including Fiorillo's with the exception of Defendant Flowers' sentence, which was remanded for re-sentencing by reason of a perceived Sentencing Guideline § 5G1.2(d) error in sentencing Flowers to 336 months rather than a maximum of 324 months. At 47 Fed. Appx. 446, the Circuit Court addressed and rejected Fiorillo's *Apprendi* claims. The Defendants filed a Petition for Writ of Certiorari with the Supreme Court, which was denied on February 24, 2003, and Fiorillo's convictions and sentence became final on that date, almost two years prior to the filing of the *United States v. Booker* opinion in January. 2005, 543 U.S. 220, addressed *infra.*

On February 20, 2004, Fiorillo filed his Petition herein under 28 U.S.C. § 2255 arguing that his convictions should be vacated because his counsel was ineffective in failing to conduct forensic testing of the audio tapes of telephone conversations used at trial and that Government officials had fabricated the tape-recorded evidence against him. Fiorillo further alleged that his counsel was ineffective because he "labored under an actual non-waivable conflict of interest" but focused his claim on the alleged Government fabricated tapes. On November 1, 2004, Fiorillo filed a motion to amend his Petition to add a claim that his sentence is illegal.

After much briefing and correspondence to and from the court, as well as numerous telephonic hearings, on June 7, 2005, this court ordered the Government

Memorandum Opinion-4

to provide the sealed original tape recordings in open court so they could be copied and forensically tested by Fiorillo's expert. Magistrate Judge James Larson supervised the unsealing of the tapes.

On May 4, 2006, the court directed counsel for Fiorillo to file a motion for an evidentiary hearing or motion for summary judgment on the claimed fabricated tapes. On June 12, 2006 Fiorillo filed his motion for summary judgment abandoning completely his claim that the tapes were fabricated stating that he "is not prepared to proceed on his allegation that government agents fabricated the tapes played at trial." Rather, he then focused on his claim that attorney Tony Serra, who represented him at trial, labored under an unwaivable conflict of interest and also on his added claim that his sentence is illegal under *United States v. Apprendi,* 530 U.S. 466 (2000), *Blakely v. Washington,* 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005)

## 2. Conflict of Interest Claims

*Fiorillo's* conflict of interest claim is basically two-fold. He argues that because Mr. Serra represented co-defendants Anthony Flowers and Robert Hermanek in prior situations, and because he is a "partner" of Mr. Bustamante, who represented Mr. Hermanek in this trial, he had an unwaivable conflict of interest. In his reply brief Fiorillo also argues that Serra had a conflict because he has recently been convicted of failure to pay income taxes, was under investigation therefore at the time of trial, and was afraid to put on a good defense for fear of his own legal troubles.

## A. Successive Representation of Flowers, Hermanek, and Fiorillo

Mr. Serra had represented defendant Flowers in a case brought in the Northern District of California and dismissed in 1992. He had also represented

Memorandum Opinion-5

Mr. Hermanek in a federal case unrelated to this case, brought and dismissed in the Northern District of California prior to the 1994 Indictment in this case.  On July 12, 1996, a few weeks before this trial began, Judge Smith held a hearing on any alleged conflict of interest, where Mr. Serra denied that his prior representation of Flowers and Hermanek impeded his ability to represent Mr. Fiorillo in this case and that although he and Mr. Bustamante worked out of the same office, they were not partners.  This position of Mr. Serra  was not challenged by any of the Defendants or counsel.

Judge Smith stated in open court that Serra had previously represented Flowers and Hermanek "on a collateral matter involving this case" and informed the Defendants of their right to "counsel that doesn't have this kind of conflict", describing the sources and nature of the potential conflict, including the consequences of Serra's prior representation of Flowers and Hermanek and the fact that Serra and Mr. Bustamante, who represented Defendant Hermanek operated out of the same office and both had their names on stationary.

At that hearing, Fiorillo unequivocally waived any past, current, or  future perceived conflict of interest and insistently stated his desire to have attorney Serra represent him in this case  These waivers were set forth both orally and in writing, as discussed *infra.*

Fiorillo cites *United States v. Agosto,* 675 F.2d 964, 967 (8th Cir. 1982) which involved a very different situation than the one *sub judice*.    In that case, the indictment charged that a number of Defendants used a check floating scheme to improperly obtain interest-free loans for the benefit of two businesses.  The district court disqualified one of the attorneys based on the attorney's earlier representation of multiple defendants and grand jury witnesses who would likely

be trial witnesses.  The court noted that in a case of successive representation, the goal of Fed. Rule of Criminal Procedure 44(c) is the protection of the defendant's right to his chosen retained counsel and that in dealing with a potential conflict of interest that goal must be kept in mind.

The Eighth Circuit stated:

> In the successive representation situation, privileged information obtained from the former client might be relevant to cross-examination, thus affecting advocacy in one of two ways (a) the attorney may be tempted to use that confidential information to impeach the former client; or (b) counsel may fail to conduct a rigorous cross-examination for fear of misusing his confidential information

*Id.*

> In the criminal context, disqualification on the basis of the attorney's receipt of privileged information from a co-defendant formerly represented by that attorney should only be considered upon a clear showing that the present and former client's interests are adverse.

*Id.*

The *Agosto* court further stated that if the district court is satisfied that a clear showing has been made that the interests of the defendants are adverse, the district court should consider whether there exists a means of eliminating the potential conflict less burdensome than disqualification.  In this case there was no showing of adverse interests between Fiorillo, Flowers, or Hermanek, none of whom testified before the Grand Jury or at trial.  There was no cross-examination of any Defendant since none testified and the Defendants positions were the very same–that the telephone calls did not refer to cocaine, but rather to some other substance such as marijuana or steroids. Additionally, there was a clear waiver of any potential conflict of interest and Fiorillo's choice of counsel was clear and unequivocal.

In order to show a violation of the Sixth Amendment, a claimant must show

Memorandum Opinion-7

that an actual conflict of interest adversely affected his lawyer's performance. *Belmontes v. Brown,* 313 F.3d 1094, 1118 (9th Cir. 1005) (citing *Cuyler v. Sullivan,* 446 U.S. (1980. He must show (1) that counsel actively represented conflicting interests, and (2) that the actual conflict adversely affected counsel's performance. *Mannhalt v. Reed,* 847 F.2d 576, 579 (9th Cir. 1988). Here there were no conflicting interests to adversely affect Mr. Serra's performance and no prejudice was shown. Failure to make a showing of either deficient performance or prejudice defeats an ineffective assistance of counsel claim. *Strickland v. Washington* 466 U.S. 668, 700 (1984).

An adverse effect requires establishing that there was "some effect on counsel's handling of particular aspects of the trial was likely." (quoting *United States v. Miskinis,* 966 F.2d 1263, 1 268 (9th Cir. 1992). It is more difficult to demonstrate an actual conflict of interest resulting from successive, rather than simultaneous representation. *Belmontes, supra,* 996 F.2d at 118. Even so, conflicts of interest based on successive representation may arise if the current and former case are substantially related, if the attorney reveals privileged communications of the former client, or if the attorney otherwise divides his loyalties.

Here, the former cases with Flowers and Hermanek may have had some limited, but undisclosed relationship to this case, but there is no evidence that such was the case or that any privileged communication between Mr. Serra and either Flowers or Hermanek was revealed or withheld by Mr. Serra at trial. Nor was there any sign of division of loyalty. This court, having presided over the four month trial, can take judicial notice that Mr. Serra did not back away from fully defending Mr. Fiorillo in any way. In pursuit of the claim of Fiorillo that he was

not involved in the illegal distribution of cocaine, Mr. Serra wheeled out a very large  cart of cartons with empty steroid vials allegedly seized by government agents from Fiorillo's garage and in his opening statement declared that his client "may be the biggest steroid dealer in the world, but he is not a cocaine dealer."  It was the position of Defendants Fiorillo, Flowers and Hermanek that the intercepted telephone calls did not refer to cocaine, but rather to something else such as marijuana or steroids. The jury rejected those claims.

Fiorillo argues that Serra could have called Informant A, referenced in search warrant affidavits, to testify that Flowers had other suppliers of cocaine, other than Fiorillo, but that constrained by the boundaries of privilege and his duty of loyalty to his former client Flowers, he was precluded from making any argument that would have exculpated Fiorillo and inculpated Flowers.  However, an in camera hearing of Informant A was held and Mr. Serra's office submitted questions to be asked of the informant  including:

1. . . you stated that "Flowers has a separate supplier of cocaine from the Los Angeles area, supplying him in kilogram quantities."

a. How did you know that?

b. When did you know that?

c. What were the circumstances when you heard that?

2. You stated that "Anthony Flowers had bought cocaine from Mexicans out of Los Angeles, six or seven months ago, these Mexicans had been holding $700,000 of Flowers' money from a cocaine purchase and had been slow to deliver the cocaine, but eventually did."

a. How did you know that?

b. When did you know that?

Memorandum Opinion-9

c. What were the circumstances when you heard that?

3. Please tell me as many details you can remember about the identity of Flowers' source of cocaine in Los Angeles.

a. What race or ethnicity?

b. What part of Los Angeles?

c. Do you know any names?

d. Have you ever seen any of the LA people? If so, please give physical descriptions and any other ways to identify them such as autos driven or street names.

e. Did Flowers go to LA or was the cocaine delivered?

f. Who else would know about Flowers getting cocaine from Los Angeles?

g. How often did Flowers get cocaine from Los Angeles:

h. During what time period was Flowers getting his cocaine from Los Angeles? (in relation to the dates you talked to the FBI)

I. Did you ever go to Los Angeles with or for Flowers?

j. What more do you know about the $700,000 transaction?

5.. . . You stated that " J.T. was the main supplier of narcotics being sold in the vicinity of 100th Avenue and 'C' Street in Oakland".

a. Was J.T. a supplier to Flowers?

b. If so, how do you know that?

c. If so, please provide details as to the identity of J T.

6. Do you know or have you heard of Jerry Fiorillo of San Jose?

7. Did you ever hear that Flowers was getting cocaine from someone in the San Jose area?

a. If so, did you ever tell this to the FBI?

1          b.  Why not?

2          c.  Do you recognize anyone in these photos?

3        8.  Please tell me anything else you saw or heard about where Anthony

4    Flowers got his cocaine?

5        Prior to trial and prior to the case being assigned to the undersigned,  Mr.

6    Serra, on behalf of Fiorillo sought disclosure of Informant A's identity in order to

7    obtain information from which it could be inferred that sources, other than

8    Fiorillo, supplied drugs to Defendant Flowers.    This matter was referred to then

9    Magistrate Judge, now District Judge Phillis J. Hamilton to conduct an ex parte

10   and in camera examination of Informant A to determine whether the informant's

11   identify should be disclosed to Fiorillo and/or to his counsel.  She held a hearing

12   outside the presence of counsel for either side, but in the presence of Agent

13   Broderick, and filed a Report and Recommendation.  The stated purpose of Mr.

14   Fiorillo's questions was to ascertain the extent of Informant A's knowledge about

15   Defendant Flowers' suppliers.    Essentially all of the questions proffered by the

16   Defendant were asked of the Informant, as well as the essence of the questions

17   proffered by the Government.  All the questions  were based in large part on the

18   statements in the wiretap affidavit attributed to Informant A reflecting some

19   knowledge about suppliers to Flowers.

20       Magistrate Judge Hamilton subsequently filed a Report and

21   Recommendation in which she stated:

22       Informant A affirmed the accuracy of the statements in the affidavit.
         However, Informant A was not a percipient witness to or a participant
23       in any of the events described therein.  Informant A had no direct
         knowledge and no information other than what is contained in the
24       affidavit.  Additionally, Informant A has no direct or indirect
         knowledge of sources of supply other than those reflected in the
25       affidavit.

1    The Magistrate Judge further found based on the questions proffered by

2  the Government that it was clear that Informant A's safety would be at risk should

3  his identity be disclosed.

4    Finding that the danger to Informant A and the Government's need to

5  maintain the flow of information through Informant A outweighed the Defendant's

6  need for Informant A's testimony, given the limitations of Informant A's

7  knowledge, the Magistrate Judge recommended that informant A's identity not be

8  disclosed and placed the tape of the hearing under seal.  In addition to her written

9  Report and Recommendation, the Magistrate Judge made further express findings

10  on the taped record, supporting the basis for her conclusion.

11    Mr. Serra, on Fiorillo's behalf, filed an objection to the Report and

12  Recommendation on various grounds and sought a transcript of the in camera

13  hearing.  Judge Smith considered the objections, and personally listened to the

14  tape of the in camera proceeding and, having reconsidered the entire matter de

15  novo, overruled Defendant's objections and denied the request for the production

16  of the tape.  The Order of Judge Smith states:

17    This court finds, as a matter of law, that none of the information revealed by
      the informant, including the source of his information  qualifies even
18    arguably as Brady material.  The Court also finds that the disclosure of the
      informant's identity is highly unlikely to lead to any testimony or other
19    evidence of material benefit to the defense.

20  Judge Smith also concurred that Informant A reasonably believed that his safety

21  would be at risk should his identity be disclosed .  Judge Smith then concluded:

22    Based on its own findings and conclusions, as well as the Report and
      Recommendation of the Magistrate Judge with which it fully concurs,
23    the Court DENIES defendants' request to disclose the identity of
      Informant A or to disclose a transcript of the in camera proceeding.

24
      As a result of this ruling, and the possible  danger to Informant A. he was
25
    not called to testify at trial.  Nevertheless, it is clear from the record that Mr. Serra

    Memorandum Opinion-12

not only submitted questions to be asked of Informant A during the in camera hearing, but also attempted to obtain the Informant's identity. These efforts are clearly contrary to any claim that Mr. Serra was backing away from defending Fiorillo by failing to suggest that Flowers got his cocaine from someone other than Fiorillo. Fiorillo's argument is that Serra may have known that Flowers received cocaine from a source other than these Defendants in Los Angeles and failed to bring that out at trial. However, even if it was shown that Flowers had obtained cocaine from some other source, it would not preclude a finding that Fiorillo was also providing Flowers with cocaine. The Informant A rulings were not challenged on direct appeal.

At the July, 1996 hearing, before the case was transferred to the undersigned, Judge Fern Smith specifically asked each Defendant if he understood the potential conflict issues and asked whether Mr. Fiorillo wanted to discuss the issue with another attorney. Mr. Fiorillo expressly stated that he understood, wanted Mr. Serra to represent him, and that he did not want to discuss the matter with anyone else.

Both Fiorillo and Flowers signed written waivers of any potential conflict. Fiorillo acknowledged that he knew that Serra had previously represented Flowers and Hermanek in previous cases and that these prior relationships give rise to "the possibility of a conflict". He stated that he did not believe there were or could be past, present, or future conflicts of interest and that he wished "Mr. Serra to continue representing me as my counsel of choice, and hereby freely and voluntarily waive any potential and/or perceived conflict of interest."

Mr. Serra has responded to interrogatories authorized by this court in this § 2255 proceeding and he denied that he failed or declined to consider presenting

Memorandum Opinion-13

a defense of Mr. Fiorillo because of any conflict he had with respect to his prior representation of defendants Flowers and Hermanek. He flatly declared "I aver that I would never compromise the defense of any client." His reputation and performance as an able and experienced defense attorney, as confirmed by this court's observations of the trial, bears this statement out, despite Mr. Serra's income tax convictions, discussed *infra*.

Even if Fiorillo could show some prejudice from Mr. Serra's alleged conflict of interest, which he has not, it is very clear that Fiorillo insisted that Mr. Serra represent him. There has simply been no showing that Mr. Serra's representation of Fiorillo prejudiced Fiorillo's in any way. At the hearing where Mr. Fiorillo waived any potential conflict of interest, he made it very clear that Mr. Serra was his counsel of choice. The Supreme Court has held that unlike a claim of ineffective assistance of counsel, which requires a showing of prejudice, the right to select counsel of one's choice has been regarded as the root meaning of the constitutional right to counsel whether or not that counsel was effective.

> Where the right to be assisted by counsel of one's choice is wrongly denied, . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right for counsel of choice—which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel—which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

*United States v. Gonzalez-Lopez*, 126 S.Ct. 2557, 2006 WL 1725573 U.S. (2006).

## B. Joint Representation

Fiorillo also claims that Mr. Serra had a conflict of interest because his "partner" James Bustamante represented co-defendant Robert Hermanek at trial.

During trial, this court noted both Serra and Bustamante's names on a piece of stationary and asked if this issue had ever been addressed. The court was informed that the matter had been addressed by Judge Smith and Mr. Fiorillo did not contend to the contrary.

Like the claim that Mr. Serra had a conflict of interest because of his prior representation of Flowers and Hermanek, his sharing an office with Mr. Bustamante and the fact that both their names appeared on stationary was known and addressed with Fiorillo by Judge Smith at the July, 1996 hearing on the alleged conflict of interest. Again, Fiorillo waived any such conflict both orally and in writing and as stated *supra,* made it very clear that Mr. Serra was his counsel of choice.

Judge Smith did not find that Mr. Serra and Mr. Bustamante were partners and neither does this court, but even assuming they were, this is not *per se* violative of the constitutional guarantee of effective assistance of counsel.

In *Lambert v. Blodgett,* 393 F.3d 943 (9th Cir. 2004) two attorneys representing co-defendants were associated in the same firm (public defenders) where (1) Attorney Earl was a single boss, who could terminate the contract with the other attorneys at any time and not pay them; (2) the attorneys were paid out of Earl's account, (3) there was a single investigator for the group of attorneys; (4) Earl handled all client complaints made against the firm; (5) one of the senior attorneys supervised the other attorneys and recommended at one time that Lambert's attorney be terminated for poor performance and when he was suspended from the practice of law, other attorneys in the office received the cases that would otherwise be assigned to him; (6) office space was shared at one location with the 2 lawyers having offices across the hall from each other and

Memorandum Opinion-15

having no other office anywhere; (7) the sign outside the building said "Grant County Public Defenders"; (8) the office equipment was shared by the attorneys, including the copier, the fax machine, and the computer; ( 9) the secretarial services were shared; (10) the case files were prepared by a shared secretary and retained by Earl.  Still the court found no violation of the guarantee of effective counsel.

The court cited to *Holloway v. Arkansas,* 435 U.S. 475, 482 (1978) and *Berger v. Kemp,* 483 U.S 783 (1987).  The Court in *Holloway* assumed–without deciding that "two law partners are considered as one attorney".  The Supreme Court nonetheless concluded that "requiring or permitting a single attorney to represent co-defendants . . . is not *per se* violative of constitutional guarantees of effectiveness of counsel."

The Court in *Berger* rejected a rule that would presume a conflict of interest in such situations, in favor of a presumption "that the lawyer is fully conscious of the overarching duty of complete loyalty to his or her client," and held that counsel was not burdened by an actual conflict of interest where the attorney on appeal prepared the briefs for both the petitioner and his co–defendant, failed to argue certain mitigating evidence in petitioner's brief although he had relied on such evidence at trial, and the two-co-defendants asserted inherently inconsistent defenses. *Id.* at 783-89.  Similarly, in *Holloway,* the Court emphasized that, "requiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not *per se* violative of the constitutional guarantees of effective assistance of counsel, noting that "in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation."

*Id.*

In this case, there was no evidence suggesting that Serra and Bustamante ever shared confidences regarding the management of Fiorillo or Hermanek's cases and clearly Fiorillo and Hermanek did not have inconsistent defenses. They both defended on the grounds that they did not supply Flowers with cocaine and that the telephone conversations could have referred to marijuana or steroids, but not cocaine.   Yet, they were both convicted on strong evidence that they both were involved in supplying Flowers with cocaine.  Fiorillo does not even assert facts such as did the Petitioner in *Berger,* that his attorney prepared the appellate briefs for both Fiorillo and Hermanek, did not negotiate a plea agreement for a life sentence as opposed to death as in *Berger*, or take advantage of Petitioner's lesser culpability when compared to his co-Defendant's, also as in *Berger*.

Fiorillo states no facts to support his claim that he did not receive effective assistance of counsel because Serra and Bustamante were "partners" other than the fact that they were allegedly "partners". Therefore, Fiorillo's claim that he did not receive effective assistance of counsel because of the Serra-Bustamante "partnership" lacks merit. Even if Fiorillo could show some prejudice from this alleged conflict, which he has not, it would not outweigh his clear, insistent, and unequivocal choice of counsel afer having been clearly advised by Judge Smith concerning possible conflicts.

## C. Failure to Pay Income Taxes

Finally, Fiorillo claims in his reply brief that because Mr. Serra has been convicted of failure to pay income taxes, he had a conflict of interest that prevented him from putting on a viable defense. This claim, too, is without merit.

This court can take judicial notice that Mr. Serra has a reputation of being a

qualified and sought-after defense attorney with an extensive background of
representing hundreds of criminal defendants in the Northern District of
California, including some very high-profile cases. This court also observed the
performance of Mr. Serra during this four month trial. Fiorillo cites the case of
*Solinas v. United States,* 709 F.2d 160, 1688 (2nd Cir. 1983), where the Second
Circuit held that a defendant represented by someone under investigation for being
an unlicenced attorney could overturn his conviction for bank robbery despite
"overwhelming" evidence of guilt because unknown to him, the person retained to
represent him was not licensed to practice law.

Of course a person not licensed as an attorney is not qualified to represent a
criminal defendant at trial, which is very different from this case with a well
known, licensed, qualified, and experienced  criminal defense  attorney, who has
been adjudged  guilty of tax offenses.  Fiorillo argues that:

> Clearly, what could be more of a conflict than Serra's concern over
> getting himself into trouble for yet a third time with criminal law
> enforcement authorities for his on-going criminal conduct in failing to
> pay his taxes through the course of the trial.  What greater danger
> created by a vigorous defense than that the prosecution turn on the
> attorney for his own wrongdoing.

There is not a single shred of evidence that during this case,  Mr. Serra
failed to vigorously defend Mr. Fiorillo or that he was experiencing any concern
over the fact that he might be facing trouble many years after the conclusion of
this 1996 trial for his failure to pay income taxes . The records of Mr. Serra's
recent tax offense submitted by counsel for Fiorillo also reflect that the tax matter
was prosecuted by Department of Justice attorneys based in Washington, D. C.
and did not involve any attorneys from the office of the United States Attorney for
the Northern District of California, who prosecuted the Fiorillo case.

Fiorillo suggests that an evidentiary hearing should be held on his conflict of interest claim. However, the extensive record speaks for itself and there is nothing an evidentiary hearing could add on his claim of a conflict of interest.

### 3. **Illegal Sentence Claim**

**A. Timeliness**

A petitioner must file his Petition for Writ of Habeas Corpus within one-year of the date on which his conviction became final. Fiorillo's conviction became final on February 24, 2003, when the Supreme Court denied his Petition for Writ of Certiorari. Fiorillo filed his Petition for Writ of Habeas Corpus alleging altered tapes and conflict of interest on February 20, 2004 within the statute of limitations by four days. However, his Motion to Amend his Petition to add his claim of illegal sentence was filed on November 1, 2004 nine months after the statute of limitations had run. He claims that this new claim relates back to his original Petition. However, Fed. R. Civ. P. Rule 15(a) provides that new claims do not relate back to the filing date of the Petition for statute of limitation purposes unless "the claim or defense asserted in the amendment arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading.

In *Mayle v.Felix,* 545 U.S. 644 (2005) the Supreme Court held that new claims in a habeas petition relate back only when the new claims "rise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in both time and type from the originally raised claims." Clearly, Fiorillo's claim of illegal sentence is an event separate in both time and type from his claims of doctored tapes or of ineffective assistance of counsel at trial. The Supreme Court rejected the contention, previously adopted by the Ninth

Circuit that claims that were not included in a timely filed habeas petition "could be revived simply because they relate to the same trial, conviction or sentence as a timely filed claim." *Id.*

Fiorillo argues that because the Government did not timely raise the statute of limitations issue, they have waived any such defense citing *United States v. Chaker,* 428 F.3d 1215 (9th Cir. 2005), where following a state conviction for a misdemeanor, a probationer brought *pro se* a federal habeas corpus petition which was denied and he appealed. More than one year later, he added a claim raising a First Amendment challenge to the statute he was convicted of violating. The State did not raise the statute of limitations defense in federal district court and did not discuss it anywhere in its brief before the Ninth Circuit The issue was raised for the first time in the Ninth Circuit by *amicus curiae.*

> Even so, the state failed to raise a statute of limitation defense to Chaker's First Amendment claim in federal district court, thereby waiving it. *See Nardi v. Stewart,* 354 F.3d 1134, 1141 (9th Cir. 2004) (holding that the statute of limitations. . . is an affirmative defense that the state waives by filing a responsive pleading that fails to affirmatively set forth the defense. Moreover, the state does not discuss the statute of limitations anywhere in its brief before this court. Accordingly, we decline to consider an argument raised only by CJLF on appeal. *See Russian River Watershed Prot. Comm. V. City of Santa Rosa,* 142 F.3d 1136, 1141 n. 1 (9th Cir. 1998) (declining to address argument because 'as amicus curiae candidly acknowledged, it is raised for the first time on appeal and not by any party. *Swan v. Peterson,* 6 F.3d 1373, 1383 (9th Cir. 1993). (Generally, we do not consider on appeal an issue raised only by amicus).

Here, unlike there, the Government raised the statute of limitations issue  in its initial response to Fiorillo's Motion for Summary Judgment in this court. Therefore, the statute of limitations defense is not waived and the defense  bars Fiorillo's claim of an illegal sentence.

## B. Merits

Even if Fiorillo's claim of illegal sentence was not barred by the statute of limitations, it has no merit. His claim is that on direct appeal, the Ninth Circuit vacated Defendant Flowers' sentence and that Flowers received the benefit of *Apprendi,* 539 U.S. 466 (2000), *Blakely v. Washington,* 542 U.S. 296 (2004) and *United State v. Booker,* 543 U.S. 220 (2005) at re-sentencing and Fiorillo did not, which he claims is unfair and that *Apprendi, Blakely,* and *Booker* should be applied to his sentence as well.

The jury convicted Fiorillo of one count of conspiracy to distribute cocaine, six counts of possession of cocaine with intent to distribute and one count of fraudulent use of a counterfeit access device. At the 1999 sentencing, this court found under the clear and convincing standard that Fiorillo was responsible for at least 58 kilograms of cocaine. Based on that finding, his final offense level was 40 with a criminal history category of III, and therefore a Sentencing Guideline range of 360 months to life. This court imposed a sentence of 360 months (30 years) for each of the drug counts Fiorillo was convicted of to be served concurrently.

On appeal to the Ninth Circuit, Fiorillo, Flowers, and Hermanek all challenged their sentences under *Apprendi v. New Jersey,* 530 U.S. 466 (2000). . The Ninth Circuit found that Fiorillo's 30-year sentence exceeded the 20-year statutory maximum for a conviction of conspiracy to distribute a measurable amount of cocaine under 21 U.S.C. § 846, or possession of a measurable amount of cocaine under 21 U.S.C. § 841 since the amounts were not found by the jury by proof beyond a reasonable doubt. Therefore, there was an *Apprendi* error but it did not violate Fiorillo's substantial rights since this court could, and would have "stacked" the sentences to reach the 30 year terms.

Memorandum Opinion-21

On appeal of this matter, the Government made the same two arguments it had made in *United States v. Buckland,* 277 F.3d 1173, 1178 (9th Cir. 2002 )(en banc). The first argument was that no reasonable jury could have found beyond a reasonable doubt that Fiorillo's and Flowers' offenses did not involve at 500 grams of cocaine, which would have imposed a statutory maximum of 40 years for a violation involving 500 grams or more of cocaine. This argument prevailed in *Buckland,* but the court distinguished the Fiorillo case because, unlike in *Buckland,* Fiorillo and the other Defendants had disputed that they were responsible for 500 grams or more of cocaine. Therefore, the court found that the *Apprendi* error in Fiorillo's case was plain error but also found that the error did not violate his substantial rights because of the ability of the court to "stack" the sentences to reach the appropriate 30 year term.

The Ninth Circuit in Fiorillo's case accepted the Government's second argument that the *Apprendi* error did not warrant reversal and re-sentencing because in the absence of that error, this court would have been forced to impose consecutive sentences under the then mandatory § 5G1.2(d) of the Sentencing Guidelines, which required a court to stack multiple counts to achieve a sentence within the applicable guideline range of 30 years to life, resulting in the same sentence Fiorillo actually received. The appellate court affirmed Fiorillo's 30 year sentence. These sentencing rulings by the Ninth Circuit on direct appeal are the law of the case and cannot be overturned by this court.

As stated, *supra,* the Ninth Circuit found that this court had not properly utilized Section 5G1.2(d) of the United States Sentencing Guidelines as to the total sentence imposed on Flowers and held that rather than the 360 month sentence imposed Flower's sentence should have been 324 months. 47 Fed. Appx. 447. Therefore, the Circuit Court

Memorandum Opinion-22

vacated Flowers' sentence and remanded for re-sentencing based on the reasoning in *United States v. Archdale,* 229 F.3d 861 (9th Cir. 2000), which applied in Flowers' case but not in Fiorillo's case. The Ninth Circuit later rejected the reasoning in *Archdale* in *United States v. Iniguez,* 368 F.3d 1113 (9th Cir. 2004), prior to this court's resentencing of Flowers, however the Flowers panel did not recall its prior ruling requiring resentencing and this court was bound to resentence Flowers in accordance with the mandate of the Ninth Circuit, even though the case relied on by the Ninth Circuit had by then been overruled. While Flowers' re-sentencing was pending the Supreme Court decided *Booker* and therefore, Flowers obtained the benefit of increased discretion granted to the district courts under *Booker,* even though his original sentence had been vacated on then valid Ninth Circuit reasoning later rejected by the Ninth Circuit. As a result, Flowers' sentencing was not completed prior to the *Booker* holding, while Fiorillo's sentencing was final before the *Booker* holding. *Booker* does not apply retroactively to any conviction that was final before *Booker* was decided. *United States v. Cruz,* 423 F.3d 1119, 1121 (9th Cir. 2005).

Fiorillo argues that it is not fair that Flowers was resentenced after *Booker* was decided, but the only case law Fiorillo cited for this proposition is *Walter v. United States,* 969 F.2d 814 (9th Cir. 1992), which is distinguishable from this case. In *Walter,* the court found a "manifest injustice" in denying relief to one defendant on appeal with one panel, when co-defendants had established that they were tried in violation of the Speedy Trial Act in a separate appeal with a different panel. The court held that Walter was entitled to relief because of the "necessity of treating identically-situated co-defendants identically." *Id.* at 817.

Here, to the contrary, Flowers, and Fiorillo challenged their sentences in the same direct appeal and the panel found the Guideline error substantially affected Flowers' rights

based on  then valid Ninth Circuit law, later rejected, which affected Flowers' sentence, but the Guideline issue was not applicable to Fiorillo's sentence and the Ninth Circuit affirmed Fiorillo's sentence. *Booker* was decided by the time Flowers was re-sentenced and he received a limited benefit from that holding.  Fiorillo's sentence was final prior to the *Booker* holding and therefore *Booker* did not apply in  his case.

For all of the foregoing reasons, Mr.  Fiorillo's Motion for Summary Judgment and his Petition for Writ of Habeas Corpus are **Denied.**

**IT IS SO ORDERED**.  The Clerk is directed to enter this Opinion and  Order and forward copies to counsel.

**DATED** this 26 day of September, 2006

JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

Memorandum Opinion-24

## UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

USA,

Plaintiff,

v.

JERRY JOHN FIORILLO,

Defendant.

_____/

Case Number: CR94-00427 JLQ
04-CV-729-JLQ

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 2, 2006, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Charles B. Burch
U.S. Attorney's Office
1301 Clay Street
340S
Oakland, CA 94612-5217

Flora Edwards
Attorney at Law
61 Broadway, Suite 105
New York, NY 10006

Jeffrey W. Cole
U.S. Attorney Office
Drug Enforcement Task Force
450 Golden Gate Ave
San Francisco, CA 94102

Dated: October 2, 2006

Richard W. Wieking, Clerk
By: Kurt Heiser, Deputy Clerk